UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MARIA C. CROUCH,** | § | |
|     **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. C-05-391** |
| | § | |
| **GORDON R. ENGLAND, Secretary,** | § | |
| **Department of the Navy,** | § | |
|     **Defendant** | § | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Maria Crouch filed this lawsuit against her former employer, the Department of the Navy, alleging that she was discriminated against on the basis of race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621.  Defendant filed a motion for summary judgment on April 18, 2006 to which plaintiff responded on May 9, 2006 (D.E. 16, 17).

### JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

### BACKGROUND

Plaintiff Crouch is a 62-year-old Hispanic woman (Amd. Compl., D.E. 5, p. 2).  She began working with the Department of the Navy on July 22, 2000 as a part-time flexible sales clerk with the Navy Exchange at the Naval Air Station in Kingsville, Texas (Aff. of Maria Crouch, D.E. 17, Ex. C, p. 1;  Decl. of Ofilia Alvarez, D.E. 16, Ex. 1, p. 1).  Wilma South was

petitioner's first level supervisor and Ofilia Alvarez was her second level supervisor (Alvarez Decl., D.E. 16, Ex. 1, p. 1).  At the time she was hired, plaintiff was told by Alvarez and South that she would become a full-time employee after the expiration of two years (Amd. Compl. D.E. 5, p. 2).

During plaintiff's employment with defendant she trained several younger employees, including Connie Quintanilla, Kathy Ferrer, and Audrey Gonzalez, all of whom were under the age of 40.  After having been trained, all of the younger employees were allowed to work 40 hours per week and plaintiff was never given a similar opportunity.  In addition, on several occasions plaintiff's schedule was altered so that she worked fewer hours and the younger employees worked more hours (Amd. Compl., D.E. 5, p. 4).

Many of the employees used foul language.  In October 2002 plaintiff and some of her co-workers were joking with each other and calling each other names.  Although plaintiff was not the only employee involved in the name-calling, Ms. South singled her out and told her that she was acting in a rude and inappropriate manner and told her to apologize.  Plaintiff apologized to her co-workers (Amd. Compl., D.E. 5, pp. 4-5).

In December 2002, Ms. South accused plaintiff of providing "inside information" to a customer about the discounted price on a display item, although plaintiff had not done so.  Later that day, Ms. South accused plaintiff in front of a customer of not checking the customer's identification, although the customer acknowledged that his identification had been checked. Following that incident, plaintiff asked Ms. South why she had treated her in such a hostile manner and Ms. South responded by terminating plaintiff (Amd. Compl., D.E. 5, p. 4; Crouch Aff., D.E. 17, Ex. C, pp. 1-2).

2

That same evening, plaintiff contacted Ms. Alvarez regarding her termination and Ms. Alvarez told her that Ms. South did not have the authority to terminate her.  Ms. Alvarez directed plaintiff to return to her job the next day and plaintiff did so (Amd. Compl., D.E. 5, p. 4).

On several occasions Ms. Alvarez told plaintiff to wash the windows while the younger employees were allowed to stand around in groups, gossiping and using foul language.  Plaintiff was humiliated (Crouch Aff., D.E. 17, Ex. C, p. 4).

On or around February 25, 2003 plaintiff was terminated.  The reasons given for her termination were that according to a statement dated December 20, 2003, on December 18, 2003 plaintiff had remarked to an associate, Suzanne Rhea, that "yesterday that bitch, Wilma, fired me, but Ofelia told me to meet her" the next day.  Another reason given was that another associate, Audrey Gonzales, complained in a statement dated December 20, 2003, that plaintiff made rude remarks about her and referred to her as a "slut, bitch and whore" and told her to go stand on a street corner (Notice of Termination, D.E. 16, Ex. 5).[1]

Plaintiff responded in writing to the reasons for her termination, stating that she and Ms. South did not always agree on matters and that she was willing to meet with Ms. Alvarez and Ms. South to settle their differences.  She also stated that she did not discuss the matter with Ms. Rhea.  Plaintiff also said that she and Ms. Gonzalez were joking and calling each other names on October 31, 2002 and Ms. South called plaintiff into her office and told her to apologize to Ms.

---

[1] The termination letter mentioned several dates in December 2003, assumed that these references were typographical errors, because according to all of the evidence in the record the events occurred during December 2002.

3

Gonzales.  They both apologized to each other and their relationship did not change after the incident (D.E. 16, Ex. 6).

Plaintiff also contacted the local Equal Employment Opportunity Office, alleging that she was being terminated because of her age and race (D.E. 16, Ex. 7, p. 2).  An investigation was conducted (D.E. 16, Ex. 7) and an administrative judge determined that the defendant had articulated legitimate, non-discriminatory reasons for its actions or conduct and the evidence did not support plaintiff's allegations of discrimination (D.E. 16, Ex. 8).  Plaintiff appealed the decision of the administrative law judge to the Equal Employment Opportunity Commission's Office of Federal Operations which affirmed the agency's final order on May 17, 2005 (D.E. 16, Ex. 9).  Petitioner filed her complaint on August 5, 2005 (D.E. 1).

In his motion for summary judgment, the defendant argues that it terminated plaintiff for legitimate, non-discriminatory reasons related to her behavior in the workplace.  Plaintiff counters that the reasons set out by defendant were a pretext for discrimination and that younger employees were treated much more favorably than plaintiff.

## APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See FED.R.CIV.P. 56(c).  An issue is material if its resolution could affect the outcome of the action.  Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 122 S. Ct. 347 (2001).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The Court will not weigh the evidence or evaluate the credibility of witnesses.  Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings.  See Celotex, 477 U.S. at 324, 106 S. Ct. at 2553; Caboni, 278 F.3d at 451; Fed.R.Civ.P. 56(e).  After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.  Caboni, 278 F.3d at 451.

## B.  Title VII and the ADEA

Under Title VII, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin or age.  42 U.S.C.A. § 2000e-2.  The analysis of a Title VII case is well known:

5

> The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor.  Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason.  The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination.  But, if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case 'simply drops out of the picture,' . . .and 'the ultimate question [is] discrimination *vel non*.'

Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089-90 (5th Cir. 1995)(citing St. Mary's

Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); Texas

Dept. of Community Affairs v. Burdine, 450 U.S. 246, 253-257, 101 S.Ct. 1089, 1094-95, 67

L.Ed.2d 207 (1981);  McDonnell Douglas Corporation v. Green, 411 U.S. 792, 803, 93 S.Ct.

1817, 1824, 36 L.Ed.2d 668 (1971)).

The focus then shifts to the ultimate question of whether the defendant intentionally

discriminated against the plaintiff.  Grimes v. Tx. Dept. of Mental Health, 102 F.3d 137, 140 (5th

Cir. 1996)(citing Hicks, 509 U.S. 502, 510-511, 113 S.Ct. 2742, 2749, 124 L.Ed.2d 407 (1993)).

Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence and may

do so by demonstrating that a defendant's articulated non-discriminatory reason was pretextual.

Grimes, 102 F.3d at 141 (citations omitted).  A plaintiff's prima facie case, combined with

sufficient evidence to find that the employer's asserted justification is false, may, but does not

necessarily, permit the trier of fact to conclude that the employer unlawfully discriminated.

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105

(2000).  "Whether judgment as a matter of law is appropriate in any particular case will depend

on a number of factors.  Those include the strength of the plaintiff's prima facie case, the

probative value of the proof that the employer's explanation is false, and any other evidence that

supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id., 530 U.S. at 148-149, 120 S.Ct. at 2109.

The ADEA prohibits discrimination based on age.  "Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Machinchick v. PB Power, Inc., 398 F.3d 345, 349-50 (5th Cir. 2005)(citing 29 U.S.C. §623(a)(1)).  In the Fifth Circuit, claims under the ADEA are analyzed in the same manner as Title VII discrimination claims.  Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 957, n. 4 (5th Cir. 1993).

**(1) Prima Facie Case**

**(a) Race**

In order to make out a prima facie case that she was terminated on the basis of race, the plaintiff must show that (1) she belongs to a protected class;  (2) she was qualified to do her job; (3) despite her qualifications, her employment situation was adversely affected and (4) similarly situated employees outside the protected group were treated more favorably.  Bryan v. McKinsey & Co., Inc., 375 F.3d 358 (5th Cir. 2004)(citing Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001)).  In claims involving violation of work rules, a plaintiff may establish a prima facie case by showing either that she did not violate the rule, or that if she did, employees not in her protected class who engaged in similar conduct were not punished in a similar fashion.  Mayberry, 55 F.3d at 1090 (citing Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980)).

7

Plaintiff in this case is a member of a protected class, was qualified to do her job and was terminated from her position.  Accordingly, she has met the first three conditions of a prima facie case.  Regarding the fourth condition, she claims that she although she was terminated from her position, ostensibly in part for using profanity, six other employees, Audrey Gonzalez, Janet Davis, Lorin Ruscher, Melissa Vergara, Connie Quintanilla and Ms. South, were not terminated although they, too, used profanity at work (Crouch Aff., D.E. 17, Ex. C, p. 2).  At least two of the women, Ms. Gonzalez and Ms. Vergara, are Hispanic.  Ms. Davis and Ms. Ruscher are White; Connie Quintanilla is Guanmanian and Ms. South is Asian (Mot. for Sum. Jmt., D.E. 16).[2]

Because four of the six women are outside plaintiff's protected class and were not disciplined or terminated, plaintiff has made out a prima facie case of discrimination.  However, her case is not as strong as it might be because other women within her protected class were not punished for using foul language at work.

**(b) Age**

Regarding her age claim, petitioner also has made out a weak prima facie case.  The other women she alleges used profanity without disciplinary action or termination were Ms. South, age 46; Ms. Davis, age 65; Ms. Ruscher, age 22; Ms. Gonzales, age 20; Ms. Quintanilla, age 35 and Ms. Vergara, age 35[3].  Ms. Davis is older than plaintiff; Ms. South is in the protected category

---

[2]The information regarding the race or ethnicity of the other employees was not offered in a sworn document, but as part of defendant's motion.  Plaintiff did not object to the racial or ethnic descriptions of her co-workers and it is assumed that their race or ethnicity is not in dispute.

[3]Similar to the information on race and ethnicity, the information about the employees' ages is unsworn and was taken from defendant's motion for summary judgment.  Plaintiff did not

and the other four employees are much younger.  Again, it appears plaintiff has made out a prima

facie age claim, although it is weakened by the fact that two women in the protected age

category were not disciplined or terminated.

### (2) Legitimate, Non-discriminatory Reasons

Ofilia Alvarez is the branch manager of the Navy Exchange in Kingsville.  She

supervised Wilma Clark, who in turn supervised the sales clerks, including plaintiff (Alvarez

Decl., D.E. 16, Ex. 1, p. 1).  In Ms. Alvarez's affidavit, defendant set forth several reasons for

terminating plaintiff.  On December 17, 2002 Ms. Alvarez was not at work, but Ms. South called

her to tell her about an incident that had occurred.  A customer, who happened to be Ms. South's

father-in-law, was not asked by plaintiff to show his identification card when he was checking

out.  It is the policy of the Navy Exchange to require customers who are not in uniform to show

their identification cards because only authorized patrons are allowed to shop there.  Ms. South

asked plaintiff to check the customer's identification card and plaintiff responded that she knew

the customer was Ms. Alvarez's father-in-law.  After the transaction was completed, Ms. South

asked Ms. Crouch to go to her office.  Ms. Crouch responded loudly that Ms. South was

harassing her.  Ms. South asked Ms. Vergara to join them in the office so that there would be a

witness to their discussion.  Ms. Vergara and Ms. South reported that plaintiff was loud, rude,

disrespectful and not receptive to anything Ms. South said.  Plaintiff asked if she was being fired

and Ms. South told her that she was not, but that she should go home because she was being

loud, rude and disrespectful.  As Ms. Crouch left the office, she was saying loudly that she had

been fired (Alvarez Decl., D.E. 16, Ex. 1, pp. 2-8).

---

object to it in her response to the motion for summary judgment.

Plaintiff objects to the foregoing evidence as hearsay because Ms. Alvarez was not present on the day of the incident.  However, in the context of an employment discrimination lawsuit where the employer is offering reasons for terminating an employee, such statements are not considered hearsay because they are not offered for the truth of the matter asserted.  Rather, they are offered to show the supervisor's state of mind when making the decision to terminate the plaintiff.  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1048, n. 4 (5th Cir. 1996)(citing Fed. R. Evid. 801(c)).  Accordingly, Ms. Alvarez's statements are admissible for the purpose of showing that she was not motivated by discriminatory intent when she terminated plaintiff, but by reports from the employees working with plaintiff that plaintiff was behaving in a rude and troublesome manner.

Another reason given for terminating plaintiff was several of plaintiff's coworkers reported that she had done things to them they thought were inappropriate.  In her declaration, Ms. Alvarez states that an employee, Suzanne Rhea, told her of an incident where plaintiff made a statement to her that bothered her.  After conferring with the personnel department, Ms. Alvarez asked the employees to provide written statements regarding incidents they wanted to bring to Ms. Alvarez's attention (Alvarez Decl., D.E. 16, Ex. 1, pp. 3-4).  According to Ms. Alvarez, the employees made the following complaints:

(1)  Audrey Gonzalez submitted a statement complaining that on November 1, 2002, plaintiff called her a slut, bitch and whore and told her to go back to her corner on 14th Street, all in front of customers and coworkers (Alvarez Decl, D.E. 16, Ex. 1, p. 4).

(2)  Ms. Rhea complained that on December 18, 2002 plaintiff had told her, "Yesterday that bitch, Wilma fired me but Ofilia told me to meet her here today at 10:00.  Don't tell anyone I told you." (Id.)

(3)  Melissa Vergara wrote that at a December 2002 meeting with plaintiff and Ms. South,  plaintiff refused to sit down or talk calmly and instead walked out of the office saying that she did not want to talk to Ms. South (Alvarez Decl, D.E. 16, Ex. 1, pp. 4-5).

(4)  Lorin Ruscher wrote that her father had been in the store as a customer and plaintiff told him that the supervisor did not know what she was doing and was not giving plaintiff enough hours.  Ms. Ruscher said her father came away with a bad opinion of the store and management (Alvarez Decl, D.E. 16, Ex. 1, p. 5).

(5)  Connie Quitanilla reported that when two male customers told plaintiff they were looking for a $10 gift, plaintiff offered Ms. Quintanilla as the "gift."  Plaintiff and the customers laughed and Ms. Quintanilla was angry and offended (Alvarez Decl, D.E. 16, Ex. 1, p. 5).

(6)  Lerma Juarez complained that on November 1, 2002 plaintiff's husband was in the store and in front of Ms. Juarez, plaintiff asked her husband if he could buy Ms. Juarez what he was buying for her (plaintiff).  Plaintiff then asked her husband if he loved Ms. Juarez and he responded that he did.  That incident made Ms. Juarez feel uncomfortable (Alvarez Decl, D.E. 16, Ex. 1, pp. 5-6).  On another occasion, Ms. Juarez said she wanted a ring and plaintiff said Ms. Juarez should tell plaintiff's husband.  The next day plaintiff told Ms. Juarez that her husband said she would have to go to bed with him to get the ring and it would not be as big as plaintiff's ring (Alvarez Decl, D.E. 16, Ex. 1, p. 6).

Ms. Alvarez said that she provided these statements to Carol Freeman in the personnel office at Navy Exchange in Corpus Christi.  She next spoke with either Ms. Freeman or Paul Smith in the Human Resources office and they decided that the incidents were serious enough to discharge a flexible associate.  A notice of discharge was drafted and provided to Ms. Alvarez. The termination letter mentions only two of the incidents because it was believed that they were enough to support discharge of a flexible associate (Alvarez Decl., D.E. 16, Ex. 1, p. 6).

Ms. Alvarez also stated that her decision to terminate plaintiff was based on the fact that plaintiff had been trained, offered refresher training on procedures that she refused and had been counseled on various problems related to her performance (Alvarez Decl, D.E. 16, Ex. 1, p. 7). Ms. Alvarez mentioned a particular incident where a customer bought a television for $799 but plaintiff had told someone in the receiving area to give the customer a television that cost $400. The customer returned to the store and obtained the television he had intended to buy (Alvarez Decl, D.E. 16, Ex. 1, p. 4).  An employee counseling worksheet was submitted which showed that the incident occurred on June 13, 2002.  Plaintiff responded that she had made an honest mistake.  Ms. South wrote on the form that plaintiff needed to be more focused on her tasks and should ask for help when it was needed (Counseling Worksheet, D.E. 16, Ex. 2).

Ms. Alvarez also stated that when plaintiff was evaluated in March 2002 she was rated "needs improvement" because she needed more knowledge and skills in merchandising and needed more training in cash register functions.  It was also noted that plaintiff needed to follow through on work assigned to her and that much of her work had to be redone.  Because of the evaluation, plaintiff was not eligible for a pay raise or promotion.  Ms. Alvarez was the reviewer for the evaluation (Alvarez Decl., D.E. 6, Ex. 1, p. 8).

In the written notice of termination issued to plaintiff on February 21, 2003, the only reasons given by Ms. Alvarez for plaintiff's termination were the remarks plaintiff made to Ms. Rhea where plaintiff purportedly referred to Ms. South as a "bitch" who had tried to terminate her and Ms. Gonzalez's report that plaintiff had called her names and insulted her in front of customers on November 1, 2002 (Term. Letter, D.E. 16, Ex. 5).  As mentioned above, Ms. Alvarez and the Human Resources staff believed that the two reasons were sufficient to discharge a flexible sales associate (Alvarez Decl., D.E. 16, Ex. 1, p. 6).

**(3) Evidence of Pretext**

Because the defendant has offered legitimate, non-discriminatory reasons for terminating plaintiff's employment, plaintiff must show that the reasons are a pretext for discrimination in order to avoid summary judgment.  Plaintiff points out that the two counseling worksheets used to justify plaintiff's termination were dated December 20, 2002 but plaintiff was not terminated until February 21, 2003.  Ms. Alvarez testified that she did not recall whether plaintiff had done anything in January or February 2003 that caused her to be disciplined (Alvarez Depo., D.E. 17, Ex. B, pp. 25-26).  Ms. South also testified that she did not have any problem with plaintiff after the incident in December when plaintiff allegedly became rude and referred to Ms. South as a bitch (Alvarez Depo, D.E. 17, Ex. A, p. 30).  Plaintiff argues that the fact that defendant waited two months after plaintiff engaged in the misconduct to terminate her is evidence that the reasons given are pretext.

Ms. Alvarez stated in her declaration that after she provided to the Human Resources Department her reasons and documentation supporting the decision to terminate plaintiff, there was a delay on the part of the department in providing her with the termination letter.  If Ms.

13

Alvarez testified to those facts at trial, a jury would have no choice but to believe her in the absence of any evidence to the contrary.  Because plaintiff has not provided any evidence to cast doubt on her statement, she cannot show pretext regarding this reason for termination.

Plaintiff also notes that one of the December 20, 2002 counseling worksheets where plaintiff was reprimanded for calling her coworkers names (D.E. 16, Ex. 4) was drafted by Ms. Alvarez even though Ms. South had told plaintiff that she was only going to receive a verbal warning.  Ms South testified that she gave both plaintiff and Ms. Gonzalez a verbal warning and she thought the warning was sufficient to correct the behavior (South Depo., D.E. 17, Ex. A, pp. 13-14).  Ms. South testified that she had no further problems with plaintiff after that day (South Depo., D.E. 17, Ex. A, p. 30).  Plaintiff argues that the counseling worksheet was prepared after the fact to give weight to a matter that was relatively insignificant in order to support defendant's decision to terminate plaintiff's employment for discriminatory reasons.  Moreover, Ms. South did not recommend to Ms. Alaniz that plaintiff be terminated (D.E. 17, Ex. A, p. 32).

Assuming that plaintiff is correct and that the counseling worksheet was prepared after the fact and for the reason plaintiff asserts, she has put forth some evidence of pretext. Nevertheless she still cannot prevail because she has failed to rebut the other evidence on nondiscriminatory reasons for termination articulated by defendant.  See Wallace v. Methodist Hosp. System, 271 F.3d 212, 220 (5th Cir. 2001)("The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.").  Plaintiff has not addressed the claims that she made inappropriate remarks about coworkers in front of customers, that she complained about management to customers, or that she did not focus on her work and

much of it needed to be redone.  Without addressing these reasons for termination, she cannot prevail on her claim that she was discharged in violation of Title VII or the ADEA.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (D.E. 16) is granted and summary judgment is entered in favor of defendant on all of plaintiff's claims.

Ordered this 14th day of June, 2006.


B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE